UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| DENNIS HOF,<br><br>Plaintiff,<br><br>v.<br><br>NYE COUNTY *et al.*,<br><br>Defendants. | Case No. 2:18-cv-01050-RFB<br><br>**ORDER**<br><br>Plaintiff's Emergency Motion for Temporary Restraining Order (ECF No. 2) |

Before the Court is Plaintiff Dennis Hof's ("Plaintiff")'s Emergency Motion for Temporary Restraining Order ("TRO") (ECF No. 2). The Court previously granted this Motion and announced its ruling on the record on June 9, 2018. This written order incorporates that oral ruling and supplements it. As previously announced, the Court GRANTS Plaintiff's Motion.

## I. PROCEDURAL BACKGROUND

Plaintiff filed a Complaint against Defendants Nye County; Angela Bello, in her official capacity; James Oscarson, in his personal and official capacity; Dan Schinhofen, in his personal and official capacity; Timothy Sutton, in his personal and official capacity; Nye County Sheriff's Office; and Sheron Wehrly, in her official capacity (collectively, "Defendants") on June 9, 2018. (ECF No. 1). Plaintiff alleges various constitutional violations arising from county officials' removal of a political sign on the eve of primary elections in Nye County, Nevada. Plaintiff's Motion for TRO concerns the removal of the sign, and requests that the sign be returned to him. The Court held a hearing on the matter on June 9, 2018. Counsel for the Defendants made a special

appearance at the hearing as did Ms. Bello and Mr. Sutton. The Court granted the motion on the record. This Court orally pronounced its ruling and the contours of its order. This Order incorporates that oral ruling by reference and supplements it to the extent additional findings and analysis are offered here.

## II.  FACTUAL FINDINGS

The Court makes the following factual findings. The Court incorporates by reference its factual findings made on the record at the hearing on June 9, 2018. The Court briefly summarizes and supplements those findings here. Plaintiff is a candidate for Nevada State Assembly District 36. Plaintiff has a billboard for his campaign on top of trailer bed that is located on his private property. The billboard includes a message opposing another candidate who is also a Defendant in this case. On May 25, 2018, Plaintiff received a letter from the Code Enforcement Department of Nye County. This letter had a picture of the sign at issue in this motion. The Court finds the content of the letter to be that which was read into the record at the June 9 hearing by Ms. Bello. This letter indicated that the pictured sign was in violation of local Nye County Code ("NCC") § 17.04.770. The letter did not indicate which provision of the code was the basis for the violation. The letter indicated that Plaintiff had three days to come into compliance with the code or remove the sign or have the sign removed by the county. The letter also provided a phone number for Code Enforcement that Plaintiff could call with questions about the violation. The letter did not provide a date for a hearing at which Plaintiff could contest the determination that the sign was in violation of the code. The letter did not indicate that Code Enforcement had the authority to overturn or reverse the preliminary determination that the sign was in violation of the code. The Court also finds that the Code Enforcement Department did not actually have a specific determination of which section of the code the sign violated.

On Thursday, June 7, 2018, Plaintiff received a call from Ms. Bello, who told him that one of Plaintiff's political signs violated NCC § 17.04.770.  The Plaintiff had and has several signs in the local area. Some of these signs are on top of trucks being driven around the area. Some of the signs are signs on trailer beds on Plaintiff's private property.  Some signs are billboards erected on

Plaintiff's property. Therefore, at the time of this conversation with Ms. Bello, Plaintiff had various political signs being displayed on his property and in the local area. Ms. Bello forwarded Plaintiff an email with the excerpt of NCC § 17.04.770, and also attached a new amendment to the code, adopted on May 1, 2018. Plaintiff's counsel and Ms. Bello spoke on the phone on the afternoon of Friday, June 8, 2018 regarding Plaintiff's signs. Ms. Bello stated during the call that mobile signs are not allowed in Nye County, and that the amendment to the code applied specifically to political signs. Ms. Bello additionally informed Plaintiff's counsel that Plaintiff had to remove a sign that was over 32 feet and political, or Ms. Bello would order it towed. The Court does not find that the Ms. Bello and Plaintiff's counsel had a clear and mutual understanding of which sign or signs Ms. Bello was referencing in the telephone conversation. Ms. Bello did not mention to Plaintiff's counsel that any signs were scheduled to be removed by the county. Based on this phone call, Plaintiff believed that the sign attached to the trailer and at issue in this motion would not be removed from his property. Plaintiff specifically relied upon these representations in not taking earlier action to prevent the confiscation of the sign at issue in this motion. The sign on the trailer which is pictured in Plaintiff's Motion was towed from Plaintiff's property at approximately 5:30 p.m. on June 8, 2018.

The sign at issue in this case contains expressive content related to the current and ongoing elections in the Nye County. Early voting in the county has been underway and the final day of voting for this election cycle is June 12, 2018. The Court finds that the expressive content of the sign at issue is directly related to the elections and could potentially influence prospective voters in the current election cycle.

### III.  LEGAL STANDARD

The analysis for a temporary restraining order is "substantially identical" to that of a preliminary injunction. <u>Stuhlbarg Intern. Sales Co, Inc. v. John D. Brush & Co., Inc.</u>, 240 F.3d 832, 839 n.7 (9th Cir. 2001). A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." <u>Winter v. Natural Res. Def. Council, Inc.</u>, 555 U.S. 7, 22 (2008). To obtain a preliminary injunction, a plaintiff must

establish four elements: "(1) a likelihood of success on the merits, (2) that the plaintiff will likely suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in its favor, and (4) that the public interest favors an injunction." Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc., 758 F.3d 1069, 1071 (9th Cir. 2014), as amended (Mar. 11, 2014) (citing Winter, 555 U.S. 7, 20 (2008)). A preliminary injunction may also issue under the "serious questions" test. Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1134 (9th Cir. 2011) (affirming the continued viability of this doctrine post-Winter). According to this test, a plaintiff can obtain a preliminary injunction by demonstrating "that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor," in addition to the other Winter elements. Id. at 1134-35 (citation omitted).

A mandatory injunction which requires a party to take affirmative steps or orders a party to take specific action, while disfavored, may be ordered upon a heightened finding that the "facts and law clearly favor the moving party." Anderson v. United States, 612 F.2d 1112, 1115 (9th Cir. 1979).

**IV.    DISCUSSION**

The Court finds that the requirements for issuing an injunctive order are satisfied.[1] The Court incorporates by reference its findings, analysis, and holding from the hearing on June 9, 2018. The Court will order the return of the sign at issue and enjoin the Defendants from removing any more signs from Plaintiff without following the procedures outlined by the Court. This order is meant to return the circumstances to the status quo prior to the conversation between Plaintiff's counsel and Ms. Bello regarding potential removal of Plaintiff's sign.[2]

---

[1] The Court notes that, although the Defendants received notice of the TRO hearing and did appear telephonically at the hearing, Defendants did not have an opportunity to submit a Response to the Motion prior to the hearing. The Court's order is somewhat of a hybrid of a TRO, preliminary injunction and potential partial mandatory injunction. The standards relevant to all have been considered and applied here.

[2] The Court does not find its order to be a mandatory injunction as it seeks merely to reinstate the status quo as of the date of the telephone conversation between Ms. Bello and Plaintiff's counsel. See generally, Stanley v. University of S. Cal., 13 F.3d 1313, 1320-21 (9th Cir. 1994)(explaining the difference between prohibitory and mandatory injunctions). However, to the extent that the portion of this Order which requires Defendants to return the sign could be

### a. Likelihood of Success on the Merits

Plaintiff argues that he is likely to succeed on his First Amendment claim, as well as his Fourteenth Amendment procedural due process claim. For the reasons stated on the record, the Court finds that it does not have sufficient information to evaluate Plaintiff's likelihood of success on the First Amendment claim, particularly as the record is not clear as to the basis for the decision to remove the sign and trailer from Plaintiff's property. However, the Court does find there is a sufficient record to find a likelihood of success on the merits as to Plaintiff's Due Process claim.

Both the federal and Nevada Constitutions provide that no person shall be deprived of life, liberty, or property without due process of the law. U.S. Const. amend. XIV §1; Nev. Const. art. I, § 8(5). Whether a law or its application amounts to a violation of procedural due process rights requires a two-step inquiry: "the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." Ky. Dep't of Corrs. v. Thompson, 490 U.S. 454, 460 (1989) (citations omitted).

In determining what process is due and whether it should be provided before or after a deprivation, courts apply the Mathews balancing test. Mathews v. Eldridge, 424 U.S. U.S. 319, 334–35 (1976). The Mathews test balances "[f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Id. at 335 (citation omitted). Notice is a fundamental due process requirement and must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Cent. Hanover Bank & Tr. Co., 339 U.S. 306, 314 (1950). Additionally, due process requires an opportunity to be heard "at a meaningful time and in a meaningful manner." Mathews, 424 U.S. at 335; Yagman v. Garcetti, 852 F.3d 859, 863 (9th Cir. 2017) (finding that a hearing for a

---

construed as mandatory, the Court finds that this portion of its order is supported even under the heightened standard for a mandatory injunction. Anderson, 612 F.2d at 1115 (noting the standard).

- 5 -

property deprivation is "the base requirement of the Due Process Clause") (citations omitted). While a hearing need not be formal in nature, "at least *some kind of . . . hearing*" generally must occur before a party is deprived of her property interest. Yagman, 852 F.3d at 864 (alteration in original) (citation omitted). A state must generally provide a pre-deprivation hearing unless it is "unduly burdensome to do so in proportion to the liberty interest at stake, or where the State is truly unable to anticipate and prevent a random deprivation of a liberty interest, postdeprivation remedies might satisfy due process." Zinermon v. Burch, 494 U.S. 113, 132 (1990) (citations omitted).

The Court finds that Plaintiff is likely to succeed on the merits of his Due Process claim. There is no dispute that Plaintiff was deprived of his property by the confiscation of the sign. The Court also considers the Mathews test, and finds that the procedures used were not constitutionally sufficient. The Court incorporates the findings set forth on the record on this factor. The Court briefly notes that the so-called "notice" letter of May 25, 2018 provided inadequate notice because it did not indicate the actual and specific basis within the code for the illegality of the sign. Plaintiff did not receive a specific determination of which section of the code the sign violated. Based on the facts, it appeared that there were several of Plaintiff's signs that Defendants potentially found to have violated the NCC. The Defendants appear to have been overwhelmed by the multiplicity and varied nature of the signs such that there was confusion as to which sign violated which sections of the code.

The specificity of the code violation, however, is crucial to satisfying due process in this case. There are multiple definitions of signs in the code, and the various categories of signs have different requirements and are subject to different restrictions or prohibitions. Without providing such specificity, and without holding a pre-deprivation hearing where Plaintiff could contest the alleged illegality of the sign, the Plaintiff is very likely to succeed on his claim that the Defendants did not afford him the constitutionally required level of due process before depriving him of his property.

Moreover, the Court does not find that affording Plaintiff or those like him a predeprivation hearing would be overly burdensome for Nye County. At the hearing no such issues were raised

and the Court does not find any such issues to exist at this time. And the Court finds that for the sign in question there were no safety issues such that there would be an urgent need to remove the question and then have a post-deprivation hearing. The sign was on private property and removed a safe distance from the street. The Defendants did not raise at the hearing any specific safety issues and certainly did not indicate that safety concerns were the basis for the confiscation of the sign. In any event, the Court finds that no such concerns were cited or referenced in the May 25 notice letter.

For all of the above reasons, the Court finds that Plaintiff is likely to succeed on the merits of his Due Process claim against Defendants and that the law and facts clearly favor the position of the Plaintiff.

### b. Irreparable Harm

Plaintiff argues that the deprivation of property, and the inability to express the speech contained on the sign, caused him irreparable harm. The Court agrees. As the Court stated on the record, due to the expressive nature of the sign and its content in relation to the upcoming county elections, Plaintiff has been, and continues to be, irreparably harmed by its confiscation and its ongoing deprivation.

### c. Balance of Equities

The Court finds that the balance of equities tilts in favor of Plaintiff, given that the Constitution provides explicit protections for both speech and property interests. The same reasons that establish Plaintiff's likelihood of success on the merits underlie the balance of equities – the Due Process Clause is meant to protect property owners from precisely the type of property deprivation that Plaintiff alleges in this case.

### d. Public interest

The Court also finds that the public interest is in Plaintiff's favor. The public has a strong interest in maintaining the property protections and due process protections that are associated with the deprivation of property by the Government.

## V. CONCLUSION

**IT IS THEREFORE ORDERED** that the Emergency Motion for Temporary Restraining Order (ECF No. 2) is GRANTED.

**IT IS FURTHER ORDERED** that Defendants return Plaintiff's sign to his property by no later than 8:00 a.m. on June 10, 2018.[3]

**IT IS FURTHER ORDERED** that the Defendants are enjoined from confiscating or taking any more of Plaintiff's signs without following the procedures outlined at the hearing on June 9, 2018. Specifically, prior to further confiscation of any of Plaintiff's signs that do not pose an immediate safety concern, he must be afforded a notice identifying the specific code violation and a date for a pre-deprivation hearing before an individual(s) who has the authority to determine the legality of a sign and enforce this determination.

**IT IS FURTHER ORDERED** that Plaintiff pay a $350 security no later than 10:00 a.m. on Monday, June 11, 2018.[4]

**IT IS FURTHER ORDERED** that the Plaintiff shall serve a copy of this Order, the Emergency Motion (ECF No. 2) and the Complaint (ECF No. 1) on the Defendants and/or their counsel by June 15, 2018.

**IT IS FURTHER ORDERED** that Defendants shall have until June 22, 2018 to file a submission seeking a modification or reversal of this Order. If no such filing occurs the prohibitive aspect of this Order as to the procedural requirements which must be afforded Plaintiff regarding the confiscation of his signs shall continue through the pendency of this case.

DATED this 10th day of June, 2018.

**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**

---

[3] The Court notes that this order is being filed after this deadline but this deadline and the Court's ruling was announced at the June 9 hearing. The Court therefore expects that the sign will have been returned consistent with this Order prior to the filing of this order.

[4] While the Court had initially announced the security as $50, this was inadvertent. The Court intended to impose a $350 security. The Court now corrects the amount in this Order.